### Pasquale BARONE

### v.

### UNITED STATES of America.

### Vincent Ferrara

### v.

### United States of America.

### Civ. Nos. 98–11104–MLW, 00–11693–MLW.

United States District Court, D. Massachusetts.

April 28, 2009.

Pasquale G. Barone, Leavenworth, TX, pro se.

Alba Doto Baccari, Bernard Grossberg, Bernard Grossberg, Esq., Martin G. Weinberg, Robert M. Goldstein, Martin G. Weinberg, PC, Boston, MA, Debra A. DelVecchio, DelVecchio & Houseman, Salem, MA, David Z. Chesnoff, Goodman & Chesnoff, Las Vegas, NV, David A. Nickerson, San Rafael, CA, for Plaintiff.

James D. Herbert, James D. Herbert, James F. Lang, Robert E. Richardson, United States Attorney's Office, Boston, MA, for Defendant.

WOLF, District Judge.

Attached is an April 23, 2009 letter from the court to Attorney General Eric H. Holder. The attachments to the letter may be obtained from the court files in these cases.

ATTACHMENT

April 23, 2009

BY FEDERAL EXPRESS

The Honorable Eric H. Holder

Attorney General of the United States

United States Department of Justice

950 Pennsylvania Avenue, N.W., Room 4400

Washington, D.C. 20530

Attention: *Annie Bradley*

Dear Attorney General Holder:

Thank you for your remarks on April 21, 2009, to the Chief Judges of the United States District Courts. We appreciate your determination to assure that Department of Justice attorneys perform their duties honorably and ably, and to take seriously any failure to do so. I am writing in response to your request that we communicate with you directly if we encounter the type of problem you wish to address.

Enclosed is my January 2, 2008 letter, with attachments, to Attorney General Michael Mukasey. As you will see, it describes the disciplinary proceedings I initiated in 2007 against an Assistant United States Attorney because of the Department of Justice's inadequate response to his misconduct in failing to disclose material exculpatory information that the Court of Appeals for the First Circuit characterized as "blatant," "feckless," "manipulative," "deliberate," and "outrageous." *Ferrara v. United States,* 456 F.3d 278, 293 (1st Cir.2006). That misconduct required me to order the release from prison of a Capo and an Associate of the Patriarca Family of La Cosa Nostra. *See Ferrara v. United States,* 384 F.Supp.2d 384 (D.Mass.2005).

As explained in my attached December 8, 2006 letter to Attorney General Alberto Gonzales, the misconduct that resulted in the release of the defendants was part of a long pattern of similar misconduct by the same prosecutor. As explained in my attached June 29, 2007 letter to Attorney General Gonzales, my January 2, 2008 letter to Attorney General Mukasey, and my attached January 2, 2008 letter to Associate Deputy Attorney General David Mar-

golis, the "sanction" for the extreme and intentional misconduct found by me and by the First Circuit was a secret, written reprimand by the United States Attorney for the District of Massachusetts who, before and after issuing it, publicly praised the prosecutor.

In my letter to Attorney General Mukasey I wrote that:

the Department's performance in the [referenced] matter raises serious questions about whether judges should continue to rely upon the Department to investigate and sanction misconduct by federal prosecutors. As one who took pride in assisting Attorney General Edward Levi in establishing [the Office of Professional Responsibility] more than thirty years ago, I sadly doubt that it is now capable of serving its intended purpose.

Judge Emmet G. Sullivan's recent appointment of a special counsel to investigate and possibly prosecute high ranking Department of Justice lawyers for contempt in the *Stevens* case confirms that other judges share my concern.

As the *Stevens* case also indicates, prosecutorial misconduct is neither a rare nor merely historical problem. As I recently wrote in the enclosed decision in *United States v. Jones,* "[t]he egregious failure of the government to disclose [in 2008] plainly material exculpatory evidence in [*Jones* ] extends a dismal history of intentional and inadvertent violations of the government's duties to disclose in cases assigned to this court." 2009 WL 151587 at *5 (D.Mass. Jan.21, 2009). Nine noteworthy examples of such misconduct were cited. *Id.* at *17–18.

In my letter to Attorney General Mukasey I also described the repeated failures of the Department of Justice to be candid and consistent with courts in matters arising from my 1999 decision finding extraor-

dinary misconduct by members of the Federal Bureau of Investigation ("FBI") concerning its informant James "Whitey" Bulger. *See United States v. Salemme*, 91 F.Supp.2d 141 (D.Mass.1999). For example, as described in detail in that letter, in the federal prosecution of FBI agent John Connolly the Department of Justice asserted that Connolly had told Bulger of individuals providing information against Bulger who were then, foreseeably, murdered. Connolly has been convicted of doing just that in a state court case in Florida that was prosecuted in part by a cross-designated Assistant United States Attorney. In both criminal cases, the government presented the immunized testimony of Bulger's associate Kevin Weeks. Weeks received a federal sentence of only six years for committing five murders based on the Department of Justice's representation that Weeks had been completely truthful and provided substantial assistance. Nevertheless, in a series of cases brought by the survivors of Bulger's victims, attorneys from the Civil Division of the Department of Justice have unsuccessfully argued that Connolly did not leak the lethal information to Bulger and have attempted to discredit Weeks' testimony on this issue.

My late colleague Judge Reginald Lindsay publicly urged the Department of Justice to settle the cases arising out of the FBI's misconduct concerning its informants. It has not done so. As a result, damages of more than $100,000,000 have been awarded against the United States in two cases and the remaining six are scheduled to be tried before the end of this summer. As the attached articles indicate, the government's approach to the remaining wrongful death cases has recently provoked renewed public criticism of the Department of Justice. *See Kevin Cullen,*

*Family Needs an Advocate,* Boston Globe, Mar. 23, 2009, at B1 ("[T]he Department of Justice tried to blame the victim. A pair of lawyers with nice suits and no scruples flew up from Washington and tried to sully Michael Donahue in the grave."); Kevin Cullen, *Where is the Justice?,* Boston Globe, Apr. 13, 2009, at B1 (noting "[t]he vindictive, unconscionable approach the government is taking with the Donahues"); Peter Gelzinis, *Heroic Ruling Stands, But Jury's Still Out On Feds,* Boston Herald, Apr. 15, 2009, at 10 (Judge Lindsay having died after finding the government liable but before awarding damages, "the government lawyers wanted to start everything from scratch." Tommy Donahue "prepared himself to be betrayed by the government he loves.").

Attorney General Gonzales told me that he would look into these matters when I first raised them with him in June, 2006. I did not hear further from him. I concluded my January, 2008 letter to Attorney General Mukasey by stating that:

> I expect that you have returned to the Department because, like so many former federal prosecutors, you retain a reverence for its mission. Therefore, I felt that I should bring these matters to your personal attention in the hope that, with your leadership, the recent past will not be prologue, and the Department will soon again discharge its duties in a manner that commands the trust of federal judges and the people of the United States.

However, I did not receive a response from Attorney General Mukasey either. Nevertheless, encouraged by the intentions and aspirations you expressed to the Chief Judges, and by your actions as Attorney General, I am sending this message to you with renewed hope.

With best wishes,

Sincerely yours,

/S/ Mark L. Wolf

Mark L. Wolf